## Commonwealth *versus* Beamish.

1. A school district is not a "body corporate" within the meaning of 118th sect. of Act of March 31st 1860 (Criminal Code), making it a misdemeanor for a director, &c., to falsify papers, &c., of such body corporate.

2. School districts are not strictly municipal corporations, having neither seal nor legislative powers; like counties and townships, they are quasi corporations.

3. An indictment charged that the defendant, being a director and secretary of a school district, with intent to defraud, altered, &c., a "book and writing, known as the duplicate of taxes," &c.: *Held*, 1, that the indictment could not be sustained under the 118th sect. of Act of 1860. 2. Nor for forgery at common law, neither copy nor purport of the whole writing, nor the part altered being set out.

4. The indictment was good under Act of March 31st 1860, sect. 17 (Criminal Procedure Act);—"duplicate of taxes" being that by which the tax list, for collection, &c., is "usually known."

5. "Duplicate," when used in connection with the collection of taxes, has a known and recognised meaning.

March 16th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Certiorari to the Court of Quarter Sessions of *Luzerne county*: No. 20, of July Term 1875; at the instance of the Commonwealth.

The following indictment was found in the Court of Quarter Sessions for the county of Luzerne, at April sessions 1875:—

"The grand inquest, &c.,   *   *   *   *   *   do present: That F. A. Beamish, yeoman, of said county, on the thirty-first day of May, A. D. eighteen hundred and seventy-three, at, &c. *   *   *   *   being a director of the fourth school district of the said city of Scranton, a body corporate then and there duly and legally organized and existing, under and by virtue of the laws of the said Commonwealth, and also an officer of the same, to wit: the secretary of the board of directors of the said body corporate, did, with intent to defraud, alter, mutilate and falsify a certain book and writing, commonly known as the duplicate of the taxes levied for the use of the said school district, for the year ending on the thirty-first day of May, A. D. eighteen hundred and

[Commonwealth *v.* Beamish.]

seventy-three, or thereabouts; it being a book and writing belonging to the said fourth school district of the said city of Scranton, a body corporate as aforesaid; contrary to the form of Act of Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

On the 27th April 1875, the defendant moved to quash the indictment, " for the reason, that said indictment sets forth no indictable or legal offence as committed by the defendant; for the reason that the fourth school district of the city of Scranton, of which the defendant is alleged was a director, is not such a body corporate or public company as is contemplated by section 118 of the Act of 31st March 1860, under which the indictment is found."

The court quashed the indictment.

This was assigned for error, on the removal of the record to the Supreme Court by the Commonwealth.

The Act of March 31st 1860 (Criminal Code), sect. 118, Pamph. L. 410, 1 Br. Purd. 349, pl. 171, is as follows:—

" If any director, manager, officer or member of any bank, or other body corporate or public company, shall, with intent to defraud, destroy, alter, mutilate or falsify any of the books, papers, writings or securities belonging to the bank, body corporate or public company of which he is a director, manager, officer or member, or shall make or concur in the making of any false entry, or any material omission in any book of accounts or other document, he shall be guilty of a misdemeanor."

*A. Farnham*, District Attorney, and *A. Ricketts*, for Commonwealth.—" Body corporate" in the act includes a School District Act of May 8th 1854, sect. 18, Pamph. L. 620, 1 Br. Purd. 242, pl. 38. Express words in a statute are not to be disregarded: Commonwealth *v.* Penna. Ins. Co., 1 Harris 165 ; Mayor *v.* Davis, 6 W. & S. 269 ; Potter's Dwarris on Statutes, pp. 144, 146 ; Dame's Appeal, 12 P. F. Smith 417 ; Bartolett *v.* Achey, 2 Wright 273 ; Howard Association's Appeal, 20 P. F. Smith 344 ; Gyger's Estate, 15 Id. 311.

*S. Woodward*, contra.

Mr. Justice MERCUR delivered the opinion of the court, May 8th 1876.

It is very evident that this indictment was designed to be framed under the 118th section of the Act of 31st of March 1860, 1 Purd. Dig. 349, pl. 171. It was a mistake, however, to assume a school district to be such a corporation as is indicated in that section. The Act of Assembly has conferred on the several school districts certain capacities as bodies corporate ; such as to sue and

be sued ; to purchase and hold such real and personal property as may be necessary for the establishment and support of its schools, and to sell the same when no longer necessary for those purposes ; and generally to make other contracts therefor in their corporate names.    Yet it has not made them strictly municipal corporations. They have neither a common seal nor legislative powers.    Like counties and townships, they are 'quasi corporations.    Within a prescribed space they exercise many of the faculties of a corporation :  Wharton et al. v. School Directors, 6 Wright 358.

That this view of the section accords with the legislative intent is manifest in other parts of the same act.    Thus, sections 116, 117 and 119, contain substantially the same language : " If any person, being a director, officer or manager of any body corporate or public company."    Yet other portions of each section clearly show that it does not apply to municipal corporations.    Whenever there is any design to extend the penal provisions of the statutes to the officers, books or records of a public office or corporation, the intent is expressed in unmistakable language.    This is done in section 17-1, page 365, pl. 255 ; and again in section 15, page 318, pl. 21.    Hence it follows that this indictment cannot be sustained under the 18th section of the act.

A further inquiry is, whether the indictment is good at common law, modified by our Criminal Procedure Act.

Forgery at common law, says Blackstone, 4 Com. 247, is the fraudulent making or alteration of a writing to the prejudice of another's rights ; and by Mr. East, to be the false making or altering malo animo, of any written instrument for the purpose of fraud and deceit : 2 Am. Crim. Law, sect. 1418.

This indictment charges that the defendant, a director and secretary of the board of school directors of the fourth school district of the city of Scranton, " did, with intent to defraud, alter, mutilate and falsify a certain book and writing, commonly known as the duplicate of the taxes, levied for the use of the said school district for the year ending on the thirty-first day of May, A. D. eighteen hundred and seventy-three, or thereabouts, it being a book and writing belonging to the said fourth school district."    It thus charges : first, the fraudulent intent ; second, the alteration and falsification ; third, of a writing which it describes by name. The former two are averred with sufficient precision to sustain an indictment at common law.    The third is insufficient.    It is true, inasmuch as the fraudulent alteration of a material fact affects the whole instrument, the forgery may be specially alleged, as constituted by the alterations, or the forgery of the whole instrument may be charged : Idem, sect. 1480.    Hence, an indictment for forging an order for nineteen dollars is supported by evidence that the order was originally made for nine dollars, and genuine, and that it had been altered to nineteen dollars : Idem, sect. 1484 ;

State *v.* Flye, 26 Maine 312. Thus, at common law, the indictment need not designate the specific words or parts of the writing altered, but under the averment that the whole is forged, the alteration of the particular part may be proved. Here, however, neither copy nor purport of the whole, nor of the part altered, is set forth or described. It therefore fails to answer the requirements of the common law.

The remaining question is, whether it is good under our "Criminal Procedure Act of 31st of March 1860?" This act wrought a great change in criminal pleadings. Sect. 13, Purd. Dig. 379, pl. 18, declares, "in any indictment for forgery, uttering, stealing, embezzling, destroying or concealing, or obtaining by false pretences, any instrument, it shall be sufficient to describe such instrument by any name or designation by which the same may be usually known, or by the purport thereof, without setting out any copy or fac simile thereof, or otherwise describing the same or value thereof."

If this written instrument is described by the name or designation by which it is usually known, it fills the requirements of the statute. It is described in the indictment as " a book and writing, commonly known as the duplicate of the taxes levied for the use of the school district." We think the word " duplicate," when used in connection with the collection of taxes, has a well-known and recognised meaning. It is known to all men.

Section 13th of the Act of 8th of May 1854, Pamph. L. 619, relating to common schools, declares the president shall "issue the duplicate and warrant for the collection of the district taxes." Section 14th declares the secretary "shall prepare the duplicate of school tax." Section 31st says, all the taxes levied and assessed " within each school year shall be contained in the same duplicate," and that " the board shall appoint some suitable and competent person as collector of the school tax duplicate for each township, borough or ward." Section 2d of the Act of 21st of April 1869, Pamph. L. 87, directs the board " to place in the hands of the treasurer a certified duplicate of the school tax" for collection. If the taxes are not paid to him within a specified time, section 3d requires the board to elect a collector, and "have the duplicate placed in his hands" for the collection of the unpaid taxes.

Thus the statutes unite with popular language in giving to the book in question the name of "duplicate." Hence it appears the indictment substantially gives the name or designation by which it is usually known.

It therefore follows the learned judge erred in quashing the indictment.

> Judgment reversed, motion to quash dismissed, and a *procedendo* awarded.