**CITY OF TYLER v. TEXAS EMPLOYERS' INS. ASS'N.　(No. 701–4626.)**

(Commission of Appeals of Texas, Section B.
Nov. 17, 1926.)

**1. Statutes ⚖️181(1)—Intention of Legislature in enacting statute must be enforced when ascertained.**

Intention of Legislature in enacting law must be enforced when ascertained, though it may not be consistent with strict language of statute.

**2. Statutes ⚖️188—Ordinary words in statute should be given common meaning, unless contrary intention appears.**

Ordinary words in statute are used in their common acceptation, and should be given that meaning, unless contrary intention appears.

**3. Statutes ⚖️199—Word "corporation" in statute ordinarily means private corporation.**

Ordinarily, reference in statute to "corporation" means private corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corporation.]

**4. Municipal corporations ⚖️57—Municipal corporations possess only charter powers.**

Municipal corporations possess only such powers as are expressly conferred or necessarily implied in charter.

**5. Statutes ⚖️219—Opinions of Attorney General are not controlling.**

Opinions of Attorney General are not controlling with court, though they are persuasive.

**6. Constitutional law ⚖️48—Construction of statute which will not render it void will be adopted.**

Where statute is open fairly to two constructions, one of which will render it void and the other will not, latter will be adopted.

**7. Municipal corporations ⚖️873—Municipalities cannot become stockholders in Texas employers' insurance association (Const. art. 3, § 52).**

Cities and towns cannot become stockholders in Texas Employers' Insurance Association, in view of Const. art. 3, § 52, since such association is corporation engaged in insurance business on mutual plan, whose subscribers are stockholders.

**8. Master and servant ⚖️364—Relation of master and servant may exist between city and employés engaged in proprietary work.**

As between city and employés engaged in proprietary work, as distinguished from officers engaged in public service in governmental capacity, relation of master and servant may exist.

**9. Master and servant ⚖️348—Workmen's Compensation Act liberally interpreted.**

Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309) should be liberally interpreted to accomplish its purposes.

**10. Master and servant ⚖️364—Workmen's Compensation Act held inapplicable to cities and towns.**

Cities and towns *held* not within terms of Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309).

**11. Master and servant ⚖️356—Employer who cannot subscribe under Workmen's Compensation Act is not deprived of common-law defenses.**

Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309) does not deprive any employer of common-law defenses who could not for any legal reason subscribe under it.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by the Texas Employers' Insurance Association against the City of Tyler. A judgment of dismissal was reversed, and the cause remanded by the Court of Civil Appeals (283 S. W. 929), and defendant brings error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.

Troy Smith, of Tyler, for plaintiff in error.
Lawther, Pope, Leachman & Lawther, of Dallas, and T. G. Pollard and Bullock & Ramey, all of Tyler, for defendant in error.

SPEER, J. Are incorporated cities and towns in this state within the terms of our Workmen's Compensation Act? This is the sole question raised by the application for a writ of error to the decision of the Court of Civil Appeals for the Sixth District holding that they are. 283 S. W. 929. An examination of the act in part is necessary.

Article 8306, Rev. Civ. Stat. 1925, is in part as follows:

"Sec. 1. In an action to recover damages for personal injuries sustained by an employee in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense:

"1. That the employee was guilty of contributory negligence.

"2. That the injury was caused by the negligence of a fellow employee.

"3. That the employee had assumed the risk of the injury incident to his employment; but such employer may defend in such action on the ground that the injury was caused by the willful intention of the employee to bring about the injury, or was so caused while the employee was in a state of intoxication.

"4. In all such actions against an employer who is not a subscriber, as defined hereafter in this law, it shall be necessary to a recovery for the plaintiff to prove negligence of such employer or some agent or servant of such employer acting within the general scope of his employment.

"Sec. 2. The provisions of this law shall not apply to actions to recover damages for personal injuries nor for death resulting from personal injuries sustained by domestic servants, farm laborers, ranch laborers, nor to em-

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ployees of any firm, person or corporation having in his or their employ less than three employees, nor to the employees of any person, firm, or corporation operating any steam, electric, street, or interurban railway as a common carrier. Any employer of three or more employees at the time of becoming a subscriber shall remain a subscriber subject to all the rights, liabilities, duties and exemptions of such, notwithstanding after having become a subscriber the number of employees may at times be less than three."

It will be noticed the act in the first place covers actions for damages for personal injuries sustained by an employé in the course of his employment or for death resulting from personal injury, whether the employer is a subscriber under the act or not. Within its scope it abolishes the defenses of contributory negligence, negligence of a fellow servant, and assumed risk of injury incident to the employment. It does require, however, that, in all actions against an employer who is not a subscriber as defined by the act, it shall be necessary to a recovery for the plaintiff to prove negligence of such employer or some agent or servant acting within the general scope of his employment. It cannot be doubted, in the absence of some constitutional provision, that the Legislature has the power thus to fix the rights and liabilities of parties to such contracts of employment. Honnold Work, Comp. vol. 1, p. 68, note 58. The whole scheme of the act as to contracts of employment coming within its terms is a departure from the common-law rules governing such relation. It dispenses with the necessity of showing negligence upon the part of the employer or his agents and proceeds upon the theory that society is best served by making industry bear the loss sustained in injuries to, or the death of, its workmen, in the course of their employment; that such items are a part of the cost of production. The act is a substitute for the rule of the common law in those cases of eligibles who accept its terms and comply with its provisions. The employer assents by becoming a subscriber, but the employé may reserve his right of action at common law or under any statute by giving timely notice of such intention. Otherwise, the act specifically declares that:

"Employees of a subscriber and the parents of minor employees shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries, and the representatives and beneficiaries of deceased employees shall have no right of action against such subscribing employer or his agent, servant or employee for damages for injuries resulting in death, but such employees and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided for." Section 3.

It contemplates that the employer, while a subscriber under the act, shall be "subject to all the rights, liabilities, duties, and exemptions of such" act.

It will be thus seen that the act provides a radically different method of compensating injuries received in industrial accidents from that provided by the common law, and, what is extremely important in the present inquiry, creates a right of recovery with the attendant liabilities, where no cause of action had previously existed. We refer to the right given by the act to compensation where the employer is not shown to be guilty of negligence.

There can be no doubt but that it is competent for an ordinary employer, whether an individual or a private corporation, to accept this scheme of compensation and of course to agree to all its terms. This is the simple right of contract. But whether or not it is competent for an incorporated city or town to enter into such scheme and make such agreement remains to be seen.

[1] The act defines the terms "employer," "employé," and "subscriber," and it may be admitted that its language is broad enough to include incorporated cities and towns within its scope. The act, however, does not specifically include municipal corporations. The most that can be said is that it is a matter of ascertaining the intention of the Legislature with respect to including them. The intention of the Legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict language of the statute. Courts will not follow the letter of the statute when it leads away from the true intent and purpose of the Legislature and to conclusions inconsistent with the general purpose of the act. Russell v. Farquhar, 55 Tex. 355; Bear Bros. & Hirsch v. Marx & Kempner, 63 Tex. 298; Edwards v. Morton, 92 Tex. 152, 46 S. W. 792. A matter which is within the obvious purpose and meaning of the statute is as much within the statute as if it were within the letter. Conversely, a thing which is not within the intent and purpose of the statute is not within the statute, though within its letter. Lewis Sutherland Stat. Const. vol. 2, § 379, p. 730.

[2-4] Ordinarily words are used in their common acceptation and should be given that meaning unless a contrary intention appears. The ordinary meaning of the word "corporation" is private corporation, and the use by the Legislature of the word "corporation" in the act under consideration should be held to refer only to private corporations, unless it can be said the larger use of the word were intended. This rule of construction finds abundant authority in the limited powers of municipal corporations. They possess only such powers as are expressly conferred or necessarily implied in their charter. The Legislature too has shown a disposition to treat private corporations and municipal corporations as separate things. They are dealt

(288 S.W.)

with under separate titles in the statutes. The rule itself has been followed and approved by the United States Supreme Court. East Oakland v. Skinner, 94 U. S. 255, 24 L. Ed. 125. Our own Supreme Court has held the same. In Fleming v. Texas Loan Agency, 87 Tex. 238, 27 S. W. 126, 26 L. R. A. 250, in construing the old death statute, it held that the word "person" includes a private corporation, and the statute was treated as though it had expressly named private corporations. And afterwards, in Searight v. City of Austin (Tex. Civ. App.) 42 S. W. 857, it was held the statute did not apply where death was caused by the negligence or wrongful act of a municipal corporation. A writ of error was refused to this decision. While in Elliott v. City of Brownwood, 106 Tex. 292, 166 S. W. 1129, the Supreme Court, through Chief Justice Brown, made clear that this statute did not cover a death through the wrongful act, negligence, or the like, of a municipal corporation. The statute itself has been since changed. Rev. Civ. Stat. 1925, art. 4671. The same rule of construction has been announced elsewhere. Cedar County v. Johnson, 50 Mo. 225; Commonwealth v. Beamish, 81 Pa. 389; Campbell v. Paris & D. R. Co., 71 Ill. 611.

In 1913, in an opinion by the Attorney General's department written by First Assistant Attorney General, now Chief Justice, Cureton (Atty. Gen. Op. 1912–1914, p. 437) the Industrial Accident Board was advised that chapter 179, Acts of the Thirty-Third Legislature, the act under consideration, had no application whatever to municipal corporations. That opinion reviews at some length the history of such legislation, and points out that the usual practice of legislative bodies, followed in this country and in foreign countries, has been to specially include municipal corporations when it was desired that the act should cover municipal corporations. Our act, which is patterned after the Massachusetts act, does not so provide. It further points out the rule of construction above discussed, and argues that the penal provision of the act is such that it should not be presumed that the Legislature intended to inflict such upon another governmental agency of the state; municipal corporations being of course mere agencies of the state for the purpose of administering a portion of the government. It adverts to constitutional objections, but merely considers them as making it extremely doubtful whether or not the Legislature could empower a municipal corporation to become a member of or subscriber to the Texas Employers' Insurance Association, from all of which reasons the writer concluded that it was not the intention of the Legislature to attempt to make the law applicable to municipal corporations.

[5] While the opinions of the Attorney General of the state are not controlling with the court, yet they are very persuasive. Espe-

cially so in this instance, where we are of opinion the reasoning is sound and the conclusions just.

[6] While the considerations discussed might themselves be sufficient for a decision, nevertheless there are constitutional objections which to our minds are conclusive against the view that the Legislature did intend such act to apply to municipal corporations. It is elementary that, where an act is open fairly to two constructions, one of which will render void the act, and the other will not, the latter construction will be adopted. A construction will not be chosen which would destroy the act, unless the intention is compelling. This is upon the presumption that the Legislature meant the act should have some effect.

[7] Section 52 (art. 3) of our Constitution declares:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."

There are certain exceptions named in the section, but none of them covers the case under consideration. It will be seen that cities and towns are forbidden to do two things: First, they are not to lend their credit or to grant public money or thing of value in aid of or to any individual, association, or corporation; and, second, they are forbidden to become a stockholder in any corporation, association, or company.

Article 8308 of the statutes declares:

"The 'Texas Employers' Insurance Association' is hereby created a body corporate with the powers provided in this law and with all general corporate powers incident thereto."

The article at great length defines the powers and duties of such association, showing clearly that such concern is a body corporate, with the power to make insurance. In short, to constitute it, with its subscribing members, a mutual insurance association.

Section 14 provides:

"The association may, in its by-laws and policies, fix the limit of liability of the subscribers for the payment of assessments hereinafter provided for, but such limit of liability of the subscriber shall not, except by special agreement in writing between the association and subscriber, be fixed at an amount greater than an amount equal to and in addition to an annual premium."

The next section provides, among other things, that:

"Every subscriber shall, in accordance with the law and his contract, pay his proportionate part of any assessment which may be levied by the association on account of losses and ex-

penses incurred during any calendar year while he is a subscriber."

Section 16a provides that, whenever the association shall have accumulated at the end of any calendar year an admitted surplus in excess of incurred losses, expenses, and unearned premiums amounting to the sum of $200,000, the liabilities of its members to assessment shall be suspended during the ensuing calendar year, or for such further period as the association shall maintain unimpaired such surplus of $200,000. These and other provisions of the act make it clear to us that the Texas Employers' Insurance Association is a corporation engaged in the insurance business on the mutual plan, whose subscribers are stockholders in such corporation. For this reason section 52 of the Constitution abo.ve quoted forbids cities and towns from becoming stockholders therein.

But, whether such Employers' Insurance Association be technically a corporation or not, it is clear to us that the whole plan of the Workmen's Compensation Act is such that the constitutional provision that the Legislature has "no power to authorize any * * * city [or] town * * * to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever," applies with full force. Becoming a member of such association under our act necessarily would require such city or town to do these very things. In the nature of the subscriber's obligation—its agreement to be assessed for the purpose of paying losses—it lends its credit. Indeed, such assessment against the combined membership of the asssociation constitutes an important part of its authorized capital stock. It will not do to say that a condition may arise and has arisen in this very case where such assessments for the time being are not necessary, for this is true only because the association happens to be possessed of admitted assets meeting the requirements of the law and making such assessment unnecessary, but yet these assets themselves are the contributions of the members. A different condition may exist at another time. The vice is that liability to assessment is possible, yea, probable.

Viewed from another standpoint, the Legislature would have no authority to include cities and towns in the act, for the plan necessarily permits such cities and towns becoming subscribers to grant public money or thing of value in violation of the section of the Constitution already quoted. The purpose of this wholesome provision is to prevent the gratuitous appropriation of public money or property. The purposes for which public money may be expended are clearly defined by law, and a grant in aid of or to any individual, association, or corporation whatsoever is not one of these purposes, but is expressly forbidden. When the Workmen's Compensation Law is analyzed and fully un-

derstood, it is clear that to permit a municipal corporation to become a subscriber to the insurance association therein provided authorizes it to grant public money by way of premiums for insurance in aid of its employés to whom it is under no legal liability to pay. As already pointed out, the act contemplates compensation in the absence of any legal liability other than the acceptance of the plan. Cities and towns have no power to appropriate the tax money of its citizens to such a purpose. It is at best a gratuity, a bonus to the employé. The city might as well pay his doctor's fee, his grocer's bill, or grant him a pension.

[8, 9] It is not a question of the nature of the service rendered by the employé. It is well settled that at least as to those employés of the city engaged in a proprietáry work peculiar to the city as contradistinguished from officers and employés engaged in public service in a governmental capacity, the relation of master and servant may exist and the city be liable under the common law and by statute. Whitfield v. City of Paris, 84 Tex. 431, 19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69; Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909; Cawthorn v. Houston (Tex. Com. App.) 231 S. W. 701. Neither is it a question of the desirability of an .extension of the act to include such employés. The legislation is wholesome, and all of the courts have held that it should be liberally interpreted, with a view of accomplishing its purposes. Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402. We ourselves have written in the kindliest encouragement of the law. Vestal v. Tex. Emp. Ins. Ass'n (Tex. Com. App.) 285 S. W. 1041.

[10] It may be conceded that those employés of a city engaged in industrial work of a proprietary nature are as much entitled to the compensation provided by the act as are the employés of strictly private corporations. This is not the question. The question is, Has the Legislature power, in view of our constitutional provisions and limitations, to authorize cities and towns to make such insurance for their employés? We have, with much hesitancy, but after due deliberation, concluded that the Legislature has no such power, and that, if it had attempted to exercise such power, its act would have been void. The wisdom of the Constitution is for the people. Expediency will not justify a violation of its provisions.

Upon these considerations we are of the opinion the Legislature did not intend the terms of the Workmen's Compensation Law, now title 130, Rev. Civ. Stat. 1925, to apply to cities and towns.

[11] We have not overlooked the reasoning of the Court of Civil Appeals, pressed as well upon us in the oral arguments of the case, that it would be manifestly unfair to deprive the city of its common-law defenses by one

article of the act and to deny it the benefits of other parts, and that therefore the presumption should obtain that the Legislature did not intend such consequences. We quite agree that the Legislature did not intend such unfair consequences, and are equally sure they do not follow. A study of the act will show that it was designed to bring about as far as possible the protection of all workmen coming within the scope of the law. In fact, it adopted measures calculated, and no doubt purposely intended, to force employers to accept the terms of the act. It deprived them of the ordinary common-law defenses so that it would be to their interest to become subscribers to the association. But it cannot be held the Legislature meant to deprive any employer of those defenses who could not for any legal reason subscribe under its act. It applies, in the nature of things, to those who are eligible. Contracts for domestic service, farm labor, ranch labor, common carriage by rail, and other service, where less than three employés are engaged, are specially excepted from the operation of the act. Certainly employers in these cases are not thereby deprived of their common-law defenses by a law which does not apply to them. For exactly the same reason, those employers who are otherwise forbidden by law to accept under the terms of the act are not deprived of any of their existing legal rights or remedies. The act simply has no application, one way or another, to any employer except one eligible to its burdens and benefits. If we are right in our conclusions that the Constitution renders cities and towns ineligible under the act, then the Legislature did not need to except them from its operation. It would have been useless. Section 3a of article 8306 makes it specially clear the Legislature intended the act to operate upon those employers who subscribed under it, and those employés who waived their rights to common-law remedies; in other words, capable parties contracting to the law's effect. That section preserves the common-law defenses even to those eligible employers whose employés do not waive their common-law right of action; so that the abolition of the common-law defenses is not universal, even amongst eligible employers. Much more is it not applicable to ineligibles, such as cities and towns. In such cases the rights and remedies of both parties are simply not affected by the act.

The question here involved has never been passed on by our Supreme Court. The Court of Civil Appeals for the Third District, however, has held contrary to some of the views here expressed. In Dunaway v. Austin St. Ry. Co. (Tex. Civ. App.) 195 S. W. 1157, it was held that the statute applied to the extent of depriving the city of Austin of its common-law defense of contributory negligence, though it did not appear the city was attempting to operate as a subscriber under the act. The decision for reversal was also put upon another ground sufficient to support it. A writ was refused by the committee of judges. The question was not much considered. At all events, the conclusion there reached is not sound.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court, sustaining a general demurrer to the petition against the city, be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed, as recommended by the Commission of Appeals.