C. H. LEWIS v. INDEPENDENT SCHOOL DISTRICT OF THE CITY OF AUSTIN ET AL.

No. 7847. Decided March 25, 1942.
Rehearing overruled May 6, 1942.
(161 S. W., 2d Series, 450.)

*Hardy Hollers,* of Austin, for plaintiff in error.

The purchase of a fire insurance policy by the Austin Independent School District in a company such as the Millers Mutual Fire Insurance Company, would automatically make

said school district a stockholder in said company, and under Article 4867 of the Revised Statutes of Texas and Article 3, section 52 of the State Constitution a public corporation cannot become a stockholder of a mutual insurance company. 6 Cooley's Briefs on Insurance, 9; 30 Tex. Jur. 529; 29 Am. Jur. pars. 52 and 79.

*Patterson & Patterson* and *J. M. Patterson,* for the Independent School District of Austin, and *Brown, Carlson, Kiefer & Kunke,* of Chicago, Ill., and *Black, Graves & Stayton* and *Ireland Graves,* all of Austin, for the Millers Mutual Fire Insurance Company, the defendants in error.

In taking out a policy with the insurance company the policy holder did not become a stockholder, or a subscriber of its capital stock. French v. Mayor of Millville, 67 N. J. L. 349, 51 Atl. 1109; 1 Cooley on Insurance (2d ed.) 708; Dalzell v. Bourbon County Bd. of Ed. 193 Ky. 171, 235 S. W. 360; City of Macon v. Benson, 175 Ga. 502, 166 S. E. 26.

Mr. Justice Sharp delivered the opinion of the Court.

This action was instituted by C. H. Lewis against the Independent School District of the City of Austin and others for an injunction against the purchase by the officials of the district of a policy of fire insurance from The Millers Mutual Fire Insurance Company of Texas, incorporated under the laws of Texas. On trial to the court upon an agreed statement of facts, the injunction was denied. The judgment of the trial court was affirmed by the Court of Civil Appeals. 147 S. W. (2d) 298. This Court granted a writ of error.

The Independent School District of the City of Austin will be referred to in this opinion as the School District, and The Millers Mutual Fire Insurance Company of Texas will be referred to as the Insurance Company.

The sole question here presented is whether the Legislature, by the enactment of Article 4860a-8, Vernon's Annotated Civil Statutes, could constitutionally authorize the School District, a political corporation, to purchase a policy of mutual insurance.

The following facts were agreed to by the parties to this suit: Plaintiff is a resident property-owning taxpayer within the School District; the Insurance Company is a mutual insurance corporation, which has no capital stock, its fund coming

from the purchase of insurance by its members; the Insurance Company was incorporated under the laws of the State of Texas, and no question is raised as to its standing with the Insurance Commissioner of this State or as to its financial stability; because the Insurance Company has a surplus in excess of $100,000.00, the Board of Insurance Commissioners has recognized its right to issue, and the Insurance Company has proceeded to issue, nonassessable policies.

Article 4860a-1, et seq., Vernon's Annotated Civil Statutes, relate to mutual insurance companies, and prescribe the method of incorporation, the nature of the policies they may issue, and the details of the operation of such companies in this State.
Article 4860a-8 reads as follows:

"Any public or private corporation, board or association in this State or elsewhere may make application, enter into agreements for and hold policies in any such mutual insurance company. Any officer, stockholder, trustee, or legal representative of any such corporation, board, association or estate may be recognized as acting for or on its behalf for the purpose of such membership, but shall not be personally liable upon such contract of insurance by reason of acting in such representative capacity. The right of any corporation organized under the laws of this State to participate as a member of any such mutual insurance company is hereby declared to be incidental to the purpose for which such corporation is organized and as much granted as the rights and powers expressly conferred."

Article 4860a-10 provides in part as follows:

"Such a mutual company may issue a policy *without a contingent premium* while, but only while, it has a surplus equal to the capital required of a domestic stock insurance company transacting the same kinds of insurance * * *. If at any time the admitted assets are less than the unearned premium reserve, other liabilities and the required surplus, the company shall immediately *collect upon policies with a contingent premium* a sufficient proportionate part thereof to restore such assets * * *." (Italics ours.)

Acting through its Board of Trustees, the School District proposed to buy, and the Insurance Company agreed to sell to the School District, a nonassessable policy of fire insurance, to

cover certain school property within the district, at a price within the premium rates fixed for fire insurance rates generally by the Board of Insurance Commissioners. The policy has been delivered, but no payment has been made therefor. It is agreed that the Board of Trustees will pay the premium for such insurance, unless restrained by court order.

The by-laws of the Insurance Company, which are referred to and made a part of the policy of insurance, provide in part as follows:

"Sec. 2. THE OBJECT OF THE COMPANY is to transact the business of insurance as authorized under the charter of the Company and the laws of the State.

"Sec. 3. WHO ARE MEMBERS. *Each person, firm or corporation having a policy in the Company shall be a member thereof during the life of his policy, and no longer.* (Italics ours.)

"Sec. 4. *Each policyholder shall be entitled to one vote, to be cast in person or by proxy* executed and filed with the Secretary of the Company not less than one week prior to the meeting at which such proxy is used. (Italics ours.)

\* \* \* \* \* \* \*

"Sec. 6. THE ANNUAL MEETING of the members shall be held at the Company's office in the City of Fort Worth on the third Tuesday in January of each year, for the transaction of general business of the Company and the election of Directors. Special meetings of the members may be called by the President or by three Directors on twenty days' written notice to the members.

\* \* \* \* \* \* \*

"Sec. 13. LIMIT OF LIABILITY. The liability of each policyholder of this Company is limited to and by this By-Law fixed and determined to be the amount of deposit premium specified in his policy, unless the member be insured by a combination policy issued by a group of mutual fire insurance companies wherein the assured accepts contingent liability or unless the member resides in a State which requires and provides for contingent liability. In such instances the contingent liability shall be for an amount not to exceed the amount of premium or premium deposit specified in the policy and, if called upon,

shall be for the exclusive use of the holders of the contingent policies.

\* \* \* \* \* \* \*

"Sec. 15. DEPOSIT PREMIUM. Upon the issuance of the policy a member shall make a deposit with the Company (termed a Deposit Premium) and upon termination of the policy the deposit will be returned, after deducting therefrom any amounts that may be due or accrued from the member. The Executive Committee may fix that chargeable to any class or classes of policyholders, determining this with equity between the class and the Company.

"Sec. 16. GUARANTY FUND. If at any time this Company shall be dissolved or cease to transact the business of insurance, then whatever shall remain of said surplus or guaranty fund after payment of all this Company's liabilities shall be divided and distributed to the policyholders whose policies were in force July 1, 1898, or whose policies were issued after that date, pro-rata, according to the amounts by them respectively paid for insurance on their policies."

Section 52, Article 3, of our Constitution declares:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."

This Court has held that Section 52 of Article 3 of our Constitution prohibits cities from becoming members of a mutual insurance association whose subscribers are stockholders in such company. City of Tyler v. Texas Employers Ins. Assn. (Com. App.), 288 S. W. 409, id. 294 S. W. 195; Southern Casualty Co. v. Morgan (Com. App.), 12 S. W. (2d) 200; McCaleb v. Continental Casualty Co., 132 Texas 65, 116 S. W. (2d) 679.

That the School District is a political corporation or subdivision of the State, as described in Section 52 of Article 3 of the Constitution, is well established. Love v. City of Dallas, 120 Texas 351, 40 S. W. (2d) 20; Hatcher v. State, 125 Texas

84, 81 S. W. (2d) 499, 98 A. L. R. 1213; Dupuy v. State, 125 Texas Crim. Rep. 595, 121 S. W. (2d) 1003. It is true that the by-laws provide that the liability of each policyholder is limited to and determined to be the amount of deposit premium specified in the policy issued to such policyholders. The by-laws contain other provisions, the pertinent parts of which we have already copied in this opinion. When all of the provisions of the by-laws are considered, in our judgment they do not relieve this case from the plain provisions of the Constitution. The by-laws also provide that each corporation having a policy in the Insurance Company shall be a member thereof during the life of the policy, and that each policyholder shall be entitled to one vote. The language used in the Constitution is clear and unambiguous. It specifically prohibits the School District from becoming a stockholder in a corporation, association, or company. Whether the public policy announced in the Constitution is wise or unwise is not for this Court to decide. As said by Judge Speer, in the case of City of Tyler v. Texas Employers Ins. Assn., 294 S. W. 195, 197:

"It is not a question of expediency, for upon that point we might all agree, but expediency cannot substitute the judgment of the municipality for that of the judgment of the framers of the Constitution. Public policy cannot be contrary to the express provisions of the Constitution. When that instrument speaks, the matter is indelibly settled, and its wisdom cannot be questioned."

Applying the rule announced in the foregoing cases to the facts of this case, we think that the School District is prohibited by the Constitution from taking a policy in The Millers Mutual Fire Insurance Company of Texas.

We hold that the part of Article 4860a-8, supra, which provides, "Any public * * corporation * * in this State or elsewhere may make application, enter into agreements for and hold policies in any such mutual insurance company," is unconstitutional, as violating Section 52 of Article 3 of our Constitution.

It follows that the trial court erred in not granting the injunction against the purchase by the School District of the policy of insurance in the mutual company. The judgments of the trial court and of the Court of Civil Appeals are reversed,

and the cause is remanded to the trial court with instructions to grant the injunction.

CHIEF JUSTICE ALEXANDER NOT SITTING.

Opinion delivered March 25, 1942.

Rehearing overruled May 6, 1942.