

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 2, 1995

Honorable Kim Brimer
Chair
Committee on Business & Industry
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-326

Re: Whether the legislature constitutionally may establish a guaranty association for the workers' compensation liabilities of political subdivisions in which the membership would be mandatory and as to which the funding would come through assessments imposed on the membership (RQ-742)

Dear Representative Brimer:

You have informed us that a subcommittee of the Committee on Business & Industry (the "committee") has proposed a recommendation for the protection of the self-insurance funds of political subdivisions and the insurance pools of political subdivisions. Specifically, the subcommittee proposes that the legislature

> [c]reate a guaranty association specifically for public insurance pools and public self-insurers separate from the Texas Property and Casualty Insurance Guaranty Association. Membership in this association would be mandatory. The association will pay claims in the event that assets of an insolvent pool or self-insurer are insufficient to pay claims.

You indicate that the membership would fund the guaranty association through assessments.

You evidently are concerned about the constitutionality of legislation such as that proposed, should the legislature enact it. You therefore ask whether the Texas Constitution prohibits the legislature from establishing a guaranty association for the workers' compensation liabilities of certain political subdivisions in which the membership would be mandatory and which would derive its funding through assessments imposed on the membership. In our opinion, if the legislature were to enact the proposal you have described, the resulting codification would violate article III, section 52(a) of the constitution.

From your description of the proposed guaranty association, we understand that it would be similar to, although separate from, the Texas Property and Casualty Insurance Guaranty Association (the "association"), created pursuant to section 6 of the Property and Casualty Insurance Guaranty Act, Ins. Code art. 21.28-C. Section 6 requires every

entity that writes certain kinds of insurance, including workers' compensation insurance, *see* Ins. Code § 21.28-C, §§ 3, 6, to become a member of the association, *see id.* § 6. The association is required to pay in full all of a member insurer's covered claims[1] that meet certain requirements if the member insurer is placed in temporary or permanent receivership under a court order or in conservatorship by the commissioner of insurance. *Id.* § 8(a). To pay its obligations, the association assesses its member insurers. *Id.* § 8(c).

You have cited article III, sections 52, 60, and 61 of the Texas Constitution. Article 52(a) provides as follows:

> Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company. However, this section does not prohibit the use of public funds or credit for the payment of premiums on nonassessable life, health, or accident insurance policies and annuity contracts issued by a mutual insurance company authorized to do business in this State.

Article III, sections 60 and 61 of the constitution are substantially identical, although section 60 pertains to "counties and other political subdivisions," while section 61 pertains to "cities, towns, and villages." Essentially, sections 60 and 61 empower the legislature to enact laws enabling each county, municipality, or other political subdivision of the state to provide workers' compensation insurance for its employees. Sections 60 and 61 further authorize the legislature to "provide suitable laws for the administration of such insurance" in the political subdivisions "and for the payment of the costs, charges, and premiums on such policies of insurance and the benefits to be paid thereunder."[2] Tex. Const. art. III, § 61; *cf. id.* § 60.

---

[1]In general, a "covered claim" is "an unpaid claim of an insured or third-party liability claimant that arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies, issued or assumed (whereby an assumption certificate is issued to the insured) by an insurer licensed to do business in this state, if that insurer becomes an impaired insurer and the third-party claimant or liability claimant or insured is a resident of this state at the time of the insured event, or the property from which the claim arises is permanently located in this state." Ins. Code art. 21.28-C, § 5(8).

[2]We note that, pursuant to its authority under sections 60 and 61 of the constitution, the legislature has enacted section 504.011 of the Labor Code. *See* Attorney General Opinion H-338 (1974) at 3 (concluding that statutory predecessor to section 504.011 was constitutional). Section 504.011 requires every political subdivision to

extend workers' compensation benefits to its employees by:

(1) becoming a self-insurer;

The electorate adopted article III, section 60 in 1948 and section 61 in 1952. Prior to the adoption of these sections, counties and municipalities were precluded from purchasing workers' compensation insurance for their employees. This office concluded in Attorney General Opinion O-779 that a county had no duty to provide workers' compensation insurance for its employees. The opinion noted that a county and its political subdivision were immune from liability to employees. Attorney General Opinion O-779 (1939) at 1-2. Similarly, in Attorney General Opinion O-5315 this office concluded that a county commissioners court was not authorized to purchase workers' compensation insurance for county employees. The opinion appears to rely on three rationales: first, a county is not liable in damages for injuries sustained as a consequence of its employees' tortious or negligent acts, Attorney General Opinion O-5315 (1943) at 2; second, no law authorizes counties to purchase workers' compensation for its employees, *id.* at 3; and third, article III, section 52 prohibits a county from expending public funds on donations and gratuities, *id.*

At the time this office issued Attorney General Opinion O-5315 and the electorate voted to add sections 60 and 61 to the constitution, courts and this office construed article III, section 52 strictly to preclude any expenditure of public funds to an individual, association, or corporation whatsoever. *See, e.g., San Antonio Indep. Sch. Dist. v. Board of Trustees,* 204 S.W.2d 22, 25 (Tex. Civ. App.--El Paso 1947, writ ref'd n.r.e.); *Bland v. City of Taylor,* 37 S.W.2d 291, 292-93 (Tex. Civ. App.--Austin 1931), *aff'd sub nom. Davis v. City of Taylor,* 67 S.W.2d 1033 (1934); Attorney General Opinions O-5386 (1943) at 2; O-3145 (1941) at 1-2; O-2629 (1940) at 2. In part, the legislature may have proposed to add to article III, section 60 and later section 61 to circumvent section 52's proscription of such a use of county or municipal funds. *See* Tex. Const. art. III, § 60 Interpretive Commentary and Comment--1962 Amendment; *id.* § 61 Interpretive Commentary.

In recent years, the courts and this office have taken a more liberal view of article III, section 52(a), interpreting the section to permit grants or loans to a private individual, association, or corporation so long as the grant or loan serves a public purpose. *See Davis v. City of Lubbock,* 326 S.W.2d 699, 709 (Tex. 1959); *State v. City of Austin,* 331 S.W.2d 737, 742 (Tex. 1960); *Byrd v. City of Dallas,* 6 S.W.2d 738, 740 (Tex. 1928); *Harris County v. Dowlearn,* 489 S.W.2d 140, 144 (Tex. Civ. App.--Houston [14th Dist.] 1972, writ ref'd n.r.e.); *see also* Attorney General Opinions JM-1229 (1990) at 3-5 (and

---

(footnote continued)

    (2) providing insurance under a workers' compensation insurance policy; or

    (3) entering into an interlocal agreement with other political subdivisions providing for self-insurance.

*See also* Attorney General Opinion H-338A (1974) (describing interlocal agreement as providing for self-insurance and as not inconsistent with "lending of credit" provisions of Texas Constitution article III, section 52).

sources cited therein); JM-1209 (1990) at 1 (and sources cited therein); JM-1199 (1990) at 1 (and sources cited therein); 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 233-34 (1977). Under the more liberal interpretation, a court might conclude that article III, section 52(a) authorizes the legislature to require a county or municipality to pay assessments to a guaranty association such as that proposed if the legislature has determined such payments serve a public purpose and sufficient controls are in place to ensure the public purpose is accomplished.

In this particular case, however, we conclude your proposal contravenes article III, section 52(a) as a matter of law. We base our conclusion on judicial and attorney general decisions applying the section to mutual insurance companies. We also rely upon the history of a 1986 amendment to section 52(a).

In our opinion, the guaranty association your committee has proposed is analogous to a mutual insurance company that operates on the basis of assessments. *See* 2 GEORGE J. COUCH, CYCLOPEDIA OF INSURANCE LAW § 19:18, at 685 (2d ed. 1984) (stating that mutual company may operate on basis of cash premiums, assessments, or premium notes, or any combination of these). A mutual insurance company is one "in which the members mutually contribute to the payment of losses and expenses, and in which the indemnity or benefit to accrue is conditioned upon persons holding similar contracts." *Id.* § 19:14, at 680. Thus, a mutual company is one in which a member is both insurer and insured. *Id.* Consequently, "the policyholders are, so far as rights and remedies are concerned, stockholders, the same as stockholders in a stock corporation." *Id.* at 681; *see* MICHAEL C. THOMSETT, INSURANCE DICTIONARY 134 (1989) (defining "mutual company" as "type of insurance company that is owned entirely by the policyholders, in proportionate shares").

A mutual insurance company that operates on the basis of cash premiums issues what is commonly known as "nonassessable" policies. 2 COUCH, *supra*, § 19:19, at 686. An owner of a nonassessable policy has no further obligation to contribute for the duration of the policy. *Id.* On the other hand, a mutual insurance company that operates on the basis of assessments "is dependent upon the collection of an assessment upon persons holding similar contracts." *Id.* § 19.42, at 704; *see* THOMSETT, *supra*, at 16 (defining "assessment company").

We turn to the judicial decisions to which we alluded earlier. In *City of Tyler v. Texas Employers' Insurance Ass'n*, 288 S.W. 409 (Tex. Comm'n App. 1926, judgm't adopted), the Texas Commission of Appeals considered whether an incorporated municipality may subscribe to the Texas Employers' Insurance Association (the "TEIA"), an association to which employers that are subject to the workers' compensation laws may subscribe. *Id.* at 411; *see* V.T.C.S. art. 8308, § 7 (authorizing any employer who may be subject to workers' compensation laws to subscribe to TEIA).

The court noted that the TEIA required its subscribers to pay a proportionate share of any assessment the TEIA levied to cover its losses and expenses.[3] *City of Tyler*, 388 S.W. at 411-12; *see* V.T.C.S. art. 8308, § 15 (requiring TEIA to make assessment for amount necessary to pay losses in any year in which admitted assets in excess of unearned premiums are insufficient to pay incurred losses and expenses). The court cited two reasons article III, section 52 prohibited municipalities from subscribing to such an association. First, the court found that the TEIA "is a corporation engaged in the insurance business on the mutual plan, whose subscribers are stockholders in such corporation." *City of Tyler*, 388 S.W. at 412. Because article III, section 52 forbids the legislature from authorizing a political corporation to become a stockholder in an association or corporation, the court held that article III, section 52 precludes a municipality from becoming a member of the TEIA. *Id.* Second, the court determined that, because a subscriber to the TEIA was obligated to pay assessments to cover the TEIA's losses, any municipality that subscribes to the TEIA lends its credit in violation of article III, section 52. *Id.*

In *Lewis v. Independent School District*, 161 S.W.2d 450 (Tex. 1942), the Texas Supreme Court reaffirmed its conclusions in *City of Tyler* and other cases that the "clear and unambiguous" language of article III, section 52 "prohibits cities from becoming members of a mutual insurance association whose subscribers are stockholders in such company." *Lewis*, 161 S.W.2d at 452.

This office has concluded that a political subdivision's purchase of assessable insurance coverage is tantamount to a lending of credit in contravention of article III, section 52. *See, e.g.*, Attorney General Opinions H-1300 (1978) at 1; H-755 (1975) at 2; H-365 (1974) at 1. In Attorney General Opinion H-338 this office considered whether political subdivisions might participate in the Texas Municipal League's Workmen's Compensation Joint Insurance Fund (the "fund"). The opinion determined that the fund approximated some form of mutual insurance. Attorney General Opinion H-338 (1974) at 17-18. "[The fund] calls for the payment of premiums based on predicted, not actual, experience with the investment of unused funds, with profits to be returned to members as a reduction in premiums at some future time." *Id.* The opinion concluded that the fund violated article III, section 52 of the constitution. *Id.*

Subsequently, in Attorney General Opinion H-338A this office considered whether a revamped fund contravened article III, section 52. Attorney General Opinion H-338A (1974) at 1-2. Under a supplemental agreement, members of the fund agreed annually to pay into the fund sums calculated with reference to each member's actual expense and loss experience. Supplement to Attorney General Opinion H-338A (1974) at 1-2. The opinion concluded that the fund did not contravene article III, section 52's prohibition

---

[3]We further note that the TEIA is authorized to pay dividends to its subscribers. *See* V.T.C.S. art. 8308, § 16. Additionally, in any meeting of the subscribers, each subscriber is entitled to one vote, except that an employer of five hundred covered employees is entitled to two votes and an employer is entitled to one vote for every five hundred covered employees thereafter. *Id.* § 8.

against the lending of credit.  Attorney General Opinion H-338A, at 2.  Rather, the opinion stated, the amended fund had "more nearly ... the characteristics of self-insurance."  *Id.*

None of the judicial decisions or attorney general opinions that we have just cited have been overruled.  Moreover, we believe the history of the addition of the last sentence to subsection (a) to article III, section 52 of the constitution indicates that these decisions and opinions correctly state the law.  In an apparent belated response to the court's holdings in *City of Tyler v. Texas Employers' Insurance Ass'n*, 288 S.W. 409 (Tex. Comm'n App. 1926, judgm't adopted), and *Lewis v. Independent School District*, 161 S.W.2d 450 (Tex. 1942), the legislature proposed in 1985 to amend article III, section 52(a) by authorizing the use of public funds for the purchase of certain nonassessable insurance policies from mutual insurance companies.  *See* Texas Legislative Council, Analyses of Proposed Constitutional Amendments Appearing on the November 4, 1986, Ballot 15 (Sept. 1986); *see also* House Comm. on Insurance, Bill Analysis, H.J.R. 73, 69th Leg. (1985).  In our opinion, the legislature, by passing a resolution to amend section 52(a) in this fashion, and the electorate, by approving the amendment, intended to alter the law, as interpreted in *City of Tyler* and *Lewis*, but only to the extent the law precluded a political subdivision from purchasing certain nonassessable insurance policies from mutual insurance companies.  *See* 12A TEX. JUR. 3D *Constitutional Law* § 23, at 326 (1993) (stating that constitutional provision is to be construed in light of voters' intention).  We do not believe the legislature and electorate intended to authorize a political subdivision to purchase any assessable insurance policy from a mutual insurance company.

For this office now to conclude that a political subdivision may purchase an assessable insurance policy from an association similar to a mutual insurance company would be to disregard existing precedent and the 1985 amendment to article III, section 52(a) of the constitution.  Relevant to the situation here, the Texas Supreme Court expressly has concluded that a political subdivision may not subscribe to a mutual insurance association that operates on the basis of assessments.  Furthermore, the electorate has adopted an amendment to the constitution approving the use of public funds only for the payment of certain nonassessable insurance policies.  In light of these compelling facts, we must conclude that the subcommittee's proposal to establish a guaranty association, to require public insurance pools and public self-insurers to join the association, and to fund the association through assessments on the members would, if enacted, violate article III, section 52(a) of the constitution for two reasons.  First, the obligation to pay assessments to a mutual insurance company, which we contend the guaranty association is, constitutes an unconstitutional lending of credit.  Second, membership in a mutual insurance company that operates on the basis of assessments is tantamount to holding stock in a corporation, association, or company.

# S U M M A R Y

A proposal to establish a guaranty association, to require public insurance pools and public self-insurers to join the association, and to fund the association through assessments on the members would, if enacted, violate article III, section 52(a) of the Texas Constitution for two reasons. First, the obligation to pay assessments to a mutual insurance company, such as the guaranty association, constitutes an unconstitutional lending of credit. Second, membership in a mutual insurance company that operates on the basis of assessments is tantamount to holding stock in a corporation, association, or company.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General