ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 29, 2014

The Honorable Royce West
Chair, Committee on Jurisprudence
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-1071

Re: Whether a charitable organization formed under section 281.0565 of the Health and Safety Code is a political corporation or subdivision of the State of Texas for purposes of article III, section 52(a) of the Texas Constitution (RQ-1180-GA)

Dear Senator West:

You ask whether a charitable organization formed under section 281.0565 of the Texas Health and Safety Code is a "political corporation or subdivision of the State of Texas" for purposes of article III, section 52(a) of the Texas Constitution.[1] If the answer to your first question is yes, you present an additional question of whether section 281.0518 of the Health and Safety Code "authorize[s] such [a] charitable organization to engage in a joint venture with a for-profit entity." Request Letter at 1.

Subsection 281.0565(b) authorizes certain hospital districts to "create a charitable organization[2] to facilitate the management of a district health care program by providing or arranging health care services, developing resources for health care services, or providing ancillary support services for the district." TEX. HEALTH & SAFETY CODE ANN. § 281.0565(b) (West 2010). You tell us that the Parkland Center for Clinical Innovation (the "Center") was created under this subsection to support the Dallas County Hospital District d/b/a/ Parkland Health and Hospital

---

[1]Letter from Honorable Royce West, Chair, Senate Comm. on Jurisprudence, to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (Jan. 29, 2014), http://www.texasattorneygeneral.gov/opin ("Request Letter").

[2]A "'charitable organization' means an organization that is exempt from federal income tax under Section 501(a) of the Internal Revenue Code of 1986 by being listed as an exempt organization in Section 501(c)(3) or 501(c)(4)" of the Code. TEX. HEALTH & SAFETY CODE ANN. § 281.0565(a) (West 2010). You indicate that the Center is "currently authorized to operate as an organization that is exempt from federal income tax under Section 501(a) of the Code by being listed as an exempt organization in Section 501(c)(3) of the Code during the pendency of the [Center's] application." Request Letter at 2. You do not ask about, and we do not opine on, whether an entity with only a pending application is a charitable organization under section 281.0565.

System (the "District" or "Parkland"). Request Letter at 1–2. You state that the Center now contemplates a joint venture with a for-profit entity wherein the for-profit entity would develop and sell developed technology or intellectual property as well as perform related services. *See id.* at 2–4. The business structure of the joint venture is not yet defined and could involve different kinds of organizations and structures, and you are concerned about compliance with article III, section 52(a) of the Texas Constitution. *See id.* at 3.

Article III, section 52(a) prohibits the Legislature from authorizing

> any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever, or to become a stockholder in such corporation, association or company.

TEX. CONST. art. III, § 52(a). Before we address your question about the Center, we must first address a fundamental issue involving the District. The District is a political subdivision subject to article III, section 52(a). *See* Tex. Att'y Gen. Op. No. GA-0188 (2004) at 2–4 (considering a hospital district's expenditure to its charitable organization under article III, section 52). The prohibition in article III, section 52(a) limits gratuitous transfers or grants of public funds or property. *City of Tyler v. Tex. Emp'rs' Ins. Ass'n*, 288 S.W. 409, 412 (Tex. Comm'n App. 1926, judgm't adopted). A political subdivision's transfer of public assets or property "is not 'gratuitous' if the political subdivision receives return consideration." *Tex. Mun. League Intergov'l Risk Pool v. Tex. Worker's Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002). Such transfers are permissible so long as the transfer serves a legitimate public interest and affords a clear public benefit in return. *Id.* The Texas Supreme Court has articulated a three-part test to determine whether a transfer satisfies article III, section 52(a)'s constraints: The entity making the grant or transfer must: (1) ensure that its purpose is to "accomplish a public purpose, not to benefit private parties"; (2) retain public control over the public assets and/or rights associated with the transaction in order to ensure that a "public purpose is accomplished and to protect the public's investment"; and (3) "ensure that the political subdivision receives a return benefit." *Id.* at 384. You do not provide information about the ownership of the technology and intellectual property at issue here. However, to the extent the technology, intellectual property, or any other thing of value used in conjunction with the anticipated venture is the property of the District, the District may not grant it to the Center or to a for-profit entity without satisfying the Texas Supreme Court's three-part test. *See id.*; *see also* Tex. Att'y Gen. Op. No. JC-0335 (2001) at 6–7 (discussing a political subdivision's authority to contract with private entity to ensure the accomplishment of the political subdivision's public purpose).

We now turn to your specific question about the Center. Because the Center is not a county, city or town, article III, section 52(a) applies to the Center only if it is a "political corporation or subdivision." TEX. CONST. art. III, § 52(a); *see Lewis v. Indep. Sch. Dist. of Austin*, 161 S.W.2d 450, 452 (Tex. 1942) (equating the terms "political corporation" and "political subdivision" in considering whether an independent school district was subject to article III, section 52(a)). In determining whether an entity is a political subdivision, Texas courts have said that "[a] political subdivision contemplates: geographical area and boundaries, public elections, public officials,

taxing power and a general public purpose or benefit." *Bolen v. Bd. of Firemen, Policemen & Fire Alarm Operators' Trs.*, 308 S.W.2d 904, 905 (Tex. Civ. App.—San Antonio 1958, writ ref'd). You tell us that the Center "has no geographical area or boundary, has no taxing or bonding power, and is not subject to public elections." Request Letter at 5 (footnote omitted). Under the *Bolen* analysis, the Center, as you represent it, is likely not a political subdivision.

Subsection 281.0565(c), however, specifically provides that "[a] charitable organization created by a district under this section is a unit of local government for purposes of [the Texas Tort Claims Act]." TEX. HEALTH & SAFETY CODE ANN. § 281.0565(c) (West 2010); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2005 & Supp. 2013) ("Texas Tort Claims Act"). The Legislature's decision to designate entities like the Center as units of local government for purposes of the Tort Claims Act could suggest an intent that these entities be treated like units of local governments in other contexts as well. If the Center is generally a unit of local government, it is likely also a political subdivision.

We caution further that, depending on the extent of the financial and governance connection between the Center and the District, the entities could be so closely connected that the Center could not be considered a separate, private entity. The close relationship between a hospital district and a health maintenance organization ("HMO") created under a similar provision in chapter 281 required us to consider a similar issue in a previous opinion. *See* Tex. Att'y Gen. Op. No. JC-0407 (2001). Invoking the idea of a corporate alter-ego, Opinion JC-0407 stated that the nonprofit HMO was so closely affiliated with the hospital district "that we hesitate to conclude that it is a private entity." *Id.* at 4. In JC-0407, the facts indicated that the HMO's board of directors was appointed by and served at the pleasure of the hospital district's board. *See id.* at 2, 4. The hospital district funded the necessary reserves for the HMO. *Id.* at 4. In addition, the HMO's assets would revert to the hospital district in the event of the HMO's dissolution. *Id.* Based on the close relationship between the two entities, JC-0407 concluded that the HMO could not validly be considered a private entity separate from the hospital district. The relationship between the District and the Center, as you describe it, share some attributes—namely the appointment of the Center's board by Parkland's Board of Managers—of the relationship considered in JC-0407. While the relationship between the Center and the District does not appear to be as close as the relationship considered in JC-0407, based on the information made available to us, we cannot advise you definitively that the District and the Center are sufficiently distinct so as to be considered separate entities for purposes of article III, section 52(a). For these reasons, we cannot definitively advise you whether a court would determine that the Center is a "political corporation or subdivision" subject to article III, section 52(a).

Because your second question is contingent on a determination that the Center is a political corporation or political subdivision, we do not address it directly. However, to the extent the question presumes that the Center, absent direct constraint from article III, section 52, may engage in any multitude of possible joint ventures, we advise you that any joint venture contemplated by the Center must nonetheless strictly comply with any authorizing statute. *See* TEX. HEALTH & SAFETY CODE ANN. § 281.0518 (West Supp. 2013) (authorizing specific joint ventures for the Dallas County Hospital District or its nonprofit charitable organization).

## S U M M A R Y

We cannot definitively advise you whether a court would determine that the Parkland Center for Clinical Innovation, created under section 281.0565 of the Health and Safety Code, is a political corporation or subdivision subject to article III, section 52(a) of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee