**Delores ROSS et al.,
Plaintiffs-Cross-Defendants-Appellees,**

**United States of America et al., Plaintiffs-Intervenors-Cross-Defendants-Appellees,**

v.

**HOUSTON INDEPENDENT SCHOOL DISTRICT et al., Defendants-Cross-Defendants-Appellees,**

v.

**WESTHEIMER INDEPENDENT SCHOOL DISTRICT et al., Defendants-Cross-Plaintiffs and Third Party Plaintiffs-Appellants,**

v.

**The COALITION TO PRESERVE HOUSTON and the Houston Independent School District et al., Third Party Defendants-Appellees.**

No. 78–1576.

United States Court of Appeals,
Fifth Circuit.

Nov. 6, 1978.

Rehearing Denied Dec. 5, 1978.

---

James E. Ross, Houston, Tex., for appellants.

Weldon H. Berry, Houston, Tex., for Ross, et al.

J. A. Canales, U. S. Atty., Houston, Tex., Griffin B. Bell, Atty. Gen., Frank D. Allen, Jr., John C. Hammock, Dept. of Justice, Civil Rights Div., Washington, D. C., for U. S. A.

Peter D. Roos, San Francisco, Cal., Abraham Ramirez, Jr., Houston, Tex., for Estrada, et al.

Lynn Taylor, Austin, Tex., for State of Texas.

William C. Bednar, Jr., Austin, Tex., for Texas Ed. Agency.

William Pannill, Houston, Tex., for Coalition to Preserve Houston, et al.

Bracewell & Patterson, William Key Wilde, Kelly Frels, Houston, Tex., for Houston Independent School Dist., et al.

Grant Cook, Houston, Tex., for Spring Br. Ind. School Dist.

Jay D. Howell, Jr., Houston, Tex., for City of Houston.

Betsey Rice Coleman, Houston, Tex., for League of Women Voters.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The principal issue in the present appeal of the Houston, Texas public school desegregation case is whether the district court correctly held that the fourteenth amendment prohibits the partition of the school district while it remains in the process of desegregation.[1]

The Westheimer area of Houston is an affluent residential and commercial section on the city's western edge. In the fall of 1971, some persons living in the Westheimer area began working to create the Westheimer Independent School District (WISD) as a separate educational unit. The district as proposed was located almost entirely within the boundaries of the Houston Independent School District (HISD). HISD named WISD and its interim Board of Trustees as third party defendants to the Houston School Desegregation case and sought an injunction to prohibit the formation of WISD. On April 30, 1973 the district court held that the formation of WISD would seriously impede the desegregation process in HISD and enjoined WISD proponents "from any further acts relating to the creation and organization" of WISD until April 4, 1976 and for so long thereafter as the circumstances requiring the injunction remained unchanged.

On August 20, 1976 the WISD proponents gave notice of their intent to go forward with the implementation of the district, and HISD promptly requested the court to continue the injunction. The district court invoked the abstention doctrine, stayed the

federal proceedings, and announced that its former injunction had expired.[2] HISD appealed, and this court held that abstention was improperly invoked and remanded the case to the district court for consideration of the merits. *Ross v. Houston Independent School District,* 559 F.2d 937 (5th Cir. 1977). At the conclusion of a lengthy hearing, the district court permanently enjoined the WISD proponents from taking any action to implement WISD.[3] WISD appeals that decision.

■ The division of a school district operating under a desegregation order can be permitted only if the formation of the new district will not impede the dismantling of the dual school system in the old district. *Wright v. Council of the City of Emporia,* 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972); *United States v. Scotland Neck City Board of Education,* 407 U.S. 404, 92 S.Ct. 2214, 33 L.Ed.2d 75 (1972). In such a situation, the proponents of the new district must bear a heavy burden to show the lack of deleterious effects on desegregation. *Wright,* 407 U.S. at 467, 92 S.Ct. at 2205–06, 33 L.Ed.2d at 64. The district court concluded that WISD had not borne that burden. Our review of the voluminous record confirms that the evidence presented at the hearing mandated this conclusion of the district court.

■ The task of evaluating the effects of carving a new school district out of an old one is complex, and many variables must be considered in determining whether desegregation will be impeded or advanced. Among those factors is a change in the percentage of white and minority students in the old district. *Wright,* 407 U.S. at 464, 92 S.Ct. at 2204, 33 L.Ed.2d at 62. While a disparity in the racial composition of the

1. The complicated procedural history of this litigation is discussed at length in *Ross v. Houston Independent School District,* 559 F.2d 937 (5th Cir. 1977). HISD has been under a desegregation order since 1957, *see Ross v. Eckels,* 434 F.2d 1140 (5th Cir. 1970), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1614, 29 L.Ed.2d 123 (1971), but has not yet been adjudicated to have achieved unitary status.

2. The district judge who issued the injunction died before the present controversy ignited. The case was then assigned to a second district judge who entered this order.

3. By this time the second district judge had taken senior status and the case was then assigned to a third district judge.

two districts is not conclusive of the formation issue, *id.,* "where the disparity between old and new districts is substantial, the effect on the achievement of court-ordered desegregation becomes axiomatic," *Ross v. Houston Independent School District,* 559 F.2d 937, 944 (5th Cir. 1977). In this case, the record shows that in 1976–1977 HISD contained 43.1% black students, 21.8% brown, and 35.1% white.[4] If WISD were permitted to withdraw, those statistics would change to 44.8% black, 22.5% brown, and 32.7% white. WISD's excision would remove 10.5% of HISD's total white enrollment.

Although these changes in racial composition alone do not necessarily prohibit the formation of WISD, other factors present in this case reinforce that conclusion. HISD is suffering from the "white flight" phenomenon common to many school districts undergoing the judicial desegregation process. The white pupil population declined from 44% of the total student population in 1972–1973 to 35.1% in 1976–1977. Uncontroverted evidence showed that this trend is likely to continue, and the record also indicates that the formation of WISD would exacerbate this problem. WISD, if permitted to operate, would be 89.6% white. Since this percentage is grossly disproportionate to HISD as a whole, the implementation of WISD could act as a catalyst to increase white flight by encouraging white families to move from HISD to WISD and by spurring persons in other predominantly white areas of HISD to form school districts of their own. If the rate of white flight from HISD is not abated, achievement of a truly desegregated public school system will become impossible. As the Supreme Court said in *Wright,* 407 U.S. at 463, 92 S.Ct. at 2204, 33 L.Ed.2d at 62:

> [D]esegregation is not achieved by splitting a single school system operating "white schools" and "Negro schools" into two new systems, each operating unitary schools within its [own] borders, where one of the two new systems is, in fact, "white" and the other is, in fact, "Negro."

In addition, the record shows that the formation of WISD could place HISD in such serious financial straits that desegregation would be affected. The departure of WISD would result in a loss of 11.3% of the total tax base of the HISD. Moreover, Westheimer is one of the fastest growing areas in Houston, and the district court's finding that, in the foreseeable future, WISD's portion of the tax base will be considerably greater than 11.3% is well supported. The evidence showed that despite HISD's presently good financial condition, the departure of WISD would have a material adverse financial affect on future desegregation efforts in HISD. HISD currently uses some of the most expensive tools available for desegregating its schools.[5] If HISD is finally to achieve unitary status, those efforts will have to be increased. The evidence adduced in the hearing before the district court fully supports its findings of adverse effects on desegregation in HISD resulting from WISD's formation.[6]

WISD also asserts that the injunction entered by the district court sweeps too broadly in that it permanently prohibits WISD proponents from taking any action toward implementing the district. We agree. The injunction brought forward

---

**4.** The statistical information regarding racial composition of HISD and WISD is printed in an appendix to this opinion.

**5.** For example, one of the principal methods used is the magnet school concept. Magnet schools contain special programs designed to attract children who live outside the attendance zones prescribed for the school. The goal of the magnet school program is to encourage transfers of students who would be in the racial minority at the magnet school. The costs

of staff and equipment to make these schools magnetic far exceeds that for ordinary schools.

**6.** WISD contests the validity and relevancy of many of the findings entered by the district court, particularly those relating to the reasons for the formation of WISD. Since the trial court was not clearly erroneous in finding that pernicious effects on desegregation in HISD flow from the formation of WISD, we need not examine any of the other criticized findings and conclusions adopted by that court.

language used in the court's original injunction order which restrained WISD and its officials from "any further acts relating to the creation and organization of" WISD. In our last opinion, we interpreted the original injunction to prohibit formation of WISD until such time as WISD shows a change in circumstances indicating that such implementation will not impede the HISD desegregation process. *Ross v. Houston Independent School District,* 559 F.2d 937, 942 (5th Cir. 1977). However, while free of the injunction's restraint during the pendency of the present phase of this litigation under the second district judge, WISD appears to have perfected its organization under Texas law.[7] No showing has been made that this *status,* without active implementation and operation, would affect the process of desegregation in HISD. There is no way to know whether changed circumstances may permit the future implementation of WISD. *See Wright,* 407 U.S. at 470, 92 S.Ct. at 2207, 33 L.Ed.2d at 64; *Stout v. Jefferson County Board of Education,* 466 F.2d 1213, 1215 (5th Cir. 1972), *cert. denied,* 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1973). Given the evidence adduced, that day appears to be far in the future. However, such present appearances do not support a judicial preclusion of all future possibilities. The district court exceeded the ambit of its discretion when it enjoined WISD's ability to maintain its corporate existence or to pursue those of its organizational rights under state law that do not involve the independent operation of a portion of HISD as WISD. Accordingly, that portion of the district court's most recent injunctive order which would forestall WISD's status as a validly created school district must be vacated. All costs in this appeal are assessed against WISD.

AFFIRMED IN PART AND VACATED IN PART.

## APPENDIX

### PROJECTED PERCENTAGES FOR HISD AND PROPOSED WISD

| RACE | 1972–73 HISD | 1976–77 HISD | 1972–73 WISD | 1976–77 WISD | 1972–73 HISD After WISD Removed | 1976–77 HISD After WISD Removed |
|---|---|---|---|---|---|---|
| BLACK | 39.4 | 43.1 | 6.2 | 5.9 | 40.7 | 44.8 |
| BROWN | 16.6 | 21.8 | 4.9 | 4.5 | 17.0 | 22.5 |
| WHITE | 44.0 | 35.1 | 88.9 | 89.6 | 42.3 | 32.7 |

7. *See Westheimer Independent School District v. Brockette,* 567 S.W.2d 780 (Tex.1978).