Delores ROSS et al., Plaintiffs,

v.

HOUSTON INDEPENDENT SCHOOL
DISTRICT et al., Defendants.

Civ. A. No. 10444.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 1, 1979.

See also 5 Cir., 583 F.2d 712.

Weldon H. Berry, Houston, Tex., for Delores Ross, plaintiffs/cross defendants.

· Joseph D. Rich, Civil Rights Div., Dept. of Justice, Washington, D. C., Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for United States, plaintiff-intervenor/cross-defendant.

Peter D. Roos, Mexican American Legal Defense & Education Fund, San Francisco, Cal., Abraham Ramirez, Houston, Tex., for Nick Estrada, plaintiff-intervenors/cross-defendants.

William Key Wilde, Kelly Frels, Bracewell & Patterson, Houston, Tex., for Houston Independent School District, defendant/cross-defendant.

William A. Harrison, Ross, Griggs & Harrison, Houston, Tex., for Westheimer Independent School District, defendant/cross-plaintiff and third party plaintiff.

Robert E. Hall, Houston, Tex., for Houston Teachers Association, intervenor.

## MEMORANDUM CONCERNING MOTIONS FOR COSTS AND ATTORNEYS FEES

COWAN, District Judge.

*Authorities*

■ Statutory and case authority authorizes and in fact encourages the award of attorneys fees to prevailing parties in desegregation cases. See:

The Emergency School Aid Act of 1972, 20 U.S.C. § 1617; and The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.

See also: *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Northcross v. Board of Education of the Memphis City Schools,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); *Newman*

*v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Hodge v. Seiler,* 555 F.2d 284 (5th Cir. 1977); *Brennan v. United Steelworkers of America,* 554 F.2d 586 (3rd Cir. 1977); *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3rd Cir. 1976); *Sabala v. Western Gillette, Inc.,* 516 F.2d 1251 (5th Cir. 1975); *Fairley v. Patterson,* 493 F.2d 598 (5th Cir. 1974); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974); *Johnson v. Combs,* 471 F.2d 84 (5th Cir. 1972); *Jinks v. Mays,* 464 F.2d 1233 (5th Cir. 1972); *Keyes v. School Dist. No. 1,* 439 F.Supp. 393 (D.Colo.1977); *Alaniz v. California Processors, Inc.,* 13 FEP Cases 738 (N.D.Cal.1976); *United States v. Board of Sch. Com'rs of Indianapolis, Ind.,* 368 F.Supp. 1191 (S.D.Ind.1974).

The case for imposition of attorneys fees, under the authorities, is particularly strong where the prevailing party has been forced to incur substantial expense by the obstinate, obdurate refusal of a school board to recognize and comply with its legal obligations.

■ The undersigned has concluded that the authorities cited above, as applied to the facts of this case set forth in this court's opinion of December 8, 1977, mandate the award of attorneys fees to Houston Independent School District (hereinafter "HISD") and Houston Teachers Association (hereinafter "HTA"). This opinion will record the reasons for that conclusion.

*Factors Militating Against Imposition of Attorneys Fees*

Despite the undersigned's basic conclusion, stated above and described in more detail below, there are legitimate and persuasive arguments which can be enunciated in support of Westheimer Independent School District's (hereinafter "WISD") position that no attorneys fees should be awarded. Some of these arguments may be itemized as follows:

1. The vast and overwhelming majority of the persons who have devoted their

time, energy and financial resources to the WISD "cause" are well-intentioned, sincere people, motivated entirely by a desire to improve public education. The WISD concept has some theoretical merit. A look at the map of HISD will show that the area of WISD is to some degree geographically isolated. As the traffic situation in Houston has grown worse, this geographical isolation has increased. In addition, there is undoubtedly some arguable theoretical merit to the proposition that a smaller, more racially and socially homogeneous school district, can be administered more efficiently and responsively than a gigantic metropolitan school district. Without doubt the vast overwhelming majority of the proponents of WISD were motivated by these concepts and in good faith believed in their merit.

2. In our judicial system a litigant should, as a general rule, feel free to make his assertions in court, even when those assertions may have slight chance of being ultimately adopted.

3. WISD's ultimate position, asserted in the lengthy hearing conducted in November and December of 1977, was that HISD's desegregation effort had been so ineffective that the WISD plan was reasonably calculated to improve the desegregation effort, and at least could not impede the desegregation effort. While the undersigned believed (and still believes) that this was an extreme view, the position has some slight germ of truth and the evidence asserted in behalf of this position persuaded the court that the achievement of unitary status should certainly have a higher priority among the various goals of HISD.

4. Candor requires anyone to admit that the law in this area has, over the years, gone through some transitions, or at least differences in emphasis. The evolving nature of the law in this area has made it under some circumstances relatively reasonable for a litigant who believes strongly in his position to think that ultimately the law may shift in his favor.

5. The WISD "movement" while, in the judgment of the undersigned at least, a generally negative, disruptive force in the community, did enable various segments of the community, which might otherwise be adverse, to work together and to experience the pleasant and constructive experience of cooperative endeavor.

6. Most of the legal authority cited above is predicated upon the assumption that many of the litigants enforcing the law with reference to school desegregation will be impecunious and financially unable to incur substantial legal expenses. In the case at bar most of the burden of this litigation has been borne by HISD, which is and has been financially capable of shouldering the expense of the litigation. Thus, HISD does not stand in the same shoes as does a group of Black-Americans or Mexican-American parents aligned against a school district with taxing authority.

Characteristically, counsel for WISD has asserted none of the valid arguments set forth above, but on the contrary has responded to HISD's and HTA's motions for attorneys fees by filing a motion in which WISD amazingly contends that it has been the prevailing party in this litigation and should recover attorneys fees from HISD. It is, of course, difficult to read the prior opinion of this court and the opinion of the Fifth Circuit Court of Appeals (see 457 F.Supp. 18 and 583 F.2d 712) and perceive how WISD's counsel could in good faith conceive that WISD was the "prevailing party." The explanation for this WISD position is that it is only by misrepresentations of this nature that WISD has been able over the years to maintain the flow of contributions to finance this continuing litigation. The observation contained in this last sentence will undoubtedly be regarded

by many as being unduly harsh, and it may be; however, the conclusion is fully supported by the testimony elicited before this court in 1977 and particularly those exhibits consisting of the communications which the leadership of WISD has sent to potential contributors from time to time. Recognition of this harsh truth is, the undersigned believes, necessary to understand this entire situation.

### Controlling Factors

A few key facts militate against the arguments for WISD set forth above. They are:

1. The leadership of WISD, and its counsel, have engaged in a totally irresponsible effort, which has had the potential to do and has done great harm. This WISD effort has been prosecuted obdurately, obstinately and, at all material times, with absolutely no realistic expectation of success.

   It may be true that one cannot fault seriously the original proponents of WISD who presented this matter initially to Judge Ben C. Connally in 1973. If the proponents of WISD, however, believed Judge Connally to be wrong in 1973, their remedy was to appeal his ruling. No appeal was perfected from Judge Connally's ruling; instead, the proponents of WISD simply waited until Judge Connally was dead and attempted to reassert their position even though it was completely manifest that there had been no substantial change in conditions and that the only thing which had really changed was that Judge Connally was deceased.

2. At all material times, it has been totally apparent that the WISD effort, as structured and presented to this court in November and December 1977, would be grossly inequitable from a financial standpoint to HISD and its taxpayers and patrons. This inequity was emphasized by WISD's own witness, Bradenberger, who himself spontaneously testified concerning the enormous inequity to HISD. The leadership of WISD and its counsel were totally aware of this great inequity and made no efforts whatsoever to mitigate the financial unfairness.

   Elemental good faith required the proponents of WISD to indicate a willingness to do financial and fiscal equity in assuming its fair share of HISD's bonded indebtedness and reimbursing the taxpayers of HISD at a fair rate for the enormously valuable physical properties which would have become the property of WISD had WISD's efforts succeeded.

3. The leadership of WISD financed the "movement" by disseminating to the membership publications which can only be described as gross misrepresentations concerning WISD's prospects of success.

### Collectability of Award of Attorneys Fees

It appears to the undersigned that this entire controversy has perhaps only academic importance. Despite the language of the Court of Appeals panel [see 583 F.2d 712 (5th Cir. 1978)] that the WISD may continue as a legal entity, it still appears to this court that WISD for all practical purposes is dead. Even after HISD ultimately achieves unitary status and is judicially adjudicated to have achieved unitary status, the principles enunciated in *Fort Bend Indep. Sch. Dist. v. City of Stafford,* 449 F.Supp. 375 (S.D.Tex.1978) would prevent the secession of WISD.

In addition, this court judicially notices the pendency of *Hereford Independent School District v. Bell (Coalition to Preserve Houston and the Houston Indep. Sch. Dist. v. Interim Board of Trustees of Westheimer Indep. Sch. Dist.,* C.A. No. H–77–92) 454 F.Supp. 143 (D.C.1978) asserting the position that the creation of WISD without obtaining Justice Department preclearance violated the Voting Rights Act of 1965. The recent case of *United States v. Board*

of Commissioners of Sheffield, Ala., 435 U.S. 110, 98 S.Ct. 965 (1978), demonstrates that WISD, before it could begin operation, would be required to obtain preclearance from the Justice Department. In the light of the facts it appears almost impossible that such clearance could be obtained.

Under the circumstances, therefore, it seems to this court almost certain that the fees awarded herein will never be collected; however, if through some virtual miracle WISD at some time in the distant future should become an economically viable entity, it is eminently reasonable and just that WISD reimburse HISD and HTA for the expenses incurred in defeating WISD's efforts in the present phase of this controversy.

*Specific Findings of Fact and Conclusions of Law*

In connection with the attorneys fee controversy, the undersigned makes the following specific findings of fact and conclusions of law:

1. The legal work for which HISD and HTA seek reimbursement was necessary to bring about compliance with the law relating to school desegregation.

2. The legal work for which HISD and HTA seek reimbursement was unnecessary in the sense that it was compelled by WISD's unreasonable, obdurate obstinancy. *Bradley v. School Board of City of Richmond, Va.*, 345 F.2d 310, 321 (4th Cir. 1965).

3. The action of WISD in attempting to proceed in this matter after Judge Connally had clearly ruled in 1973 and when there had obviously been no material change of circumstances in their favor since 1973, was unreasonable, obstinate, obdurate, unjustified by law or equity, and resulted in the extensive legal efforts for which HISD and HTA seek reimbursement. *Jinks v. Mays, supra.*

4. At all material times, the assertions of WISD have been so clearly without merit that they were not and could not be asserted in good faith.

5. The assertions and positions being taken by WISD were taken, at least in part, for the express purpose of attempting to obtain manifestly unfair financial advantages and in this specific sense, the efforts of WISD were undertaken in bad faith.

6. HISD and HTA are entitled to recover attorneys fees under the applicable statutes, and under the common law right reaffirmed in *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* and *Christiansburg Garment Co. v. EEOC, supra.*

7. HISD and HTA by their actions in defeating the efforts of WISD, vindicated policies which Congress and the appellate courts of this nation have considered policies of the highest priority. *Newman v. Piggie Park Enterprises, supra,* at 390 U.S. 402, 88 S.Ct. 964.

8. The positions asserted by WISD at all material times have been unfounded, meritless, frivolous and vexatiously asserted. *Christiansburg Garment Co. v. EEOC, supra,* 98 S.Ct. at 700.

9. Alternatively, even if WISD's position was not frivolous, groundless and unreasonable prior to the decision of the Fifth Circuit Court of Appeals in *Ross v. Houston Indep. Sch. Dist.,* 559 F.2d 937 (5th Cir. 1977), it clearly became such after that Fifth Circuit decision and after it became apparent that WISD could not marshal proof to establish the multiple facts which the Fifth Circuit required by its opinion at 944–945.

10. WISD has used the judicial process for harassment and propaganda. An effort was made by WISD counsel at the trial of this case to introduce evidence which clearly had no probative value but which was designed to attempt to harass and embarrass HISD. The same thing is

true of many of the publications disseminated by WISD in an effort to solicit contributions. These publications appear as exhibits to the statement of facts prepared in connection with the hearing conducted in November and December of 1977. In this connection, therefore, the court specifically finds that counsel for and the leadership of WISD have proceeded in this case not only frivolously and irresponsibly, but in a sense maliciously.

11. The positions asserted by WISD at all material times have been clearly contrary to established law. *Fairley v. Patterson, supra* at 606.

12. WISD's action in asserting unfounded positions with unreasonable, obdurate, obstinancy has required HISD and HTA to expend enormous efforts needlessly.

13. The leadership of WISD has financed this litigation by consistent misrepresentations to contributors concerning the applicable law and the possibilities of success in this litigation.

*Reasonableness of Fees*

This court has fairly detailed personal knowledge concerning the enormous amount of time expended on this case both by counsel for HISD and HTA. From statements of counsel in chambers, it appears that it may be possible for the parties to enter a stipulation concerning the reasonableness of the fees. Such a stipulation has not been entered, however, and therefore for the purpose of enabling this court to hear evidence concerning the reasonableness of the fees if such evidence is necessary, and for the purpose of entering a judgment, this matter is set for hearing on the 14th day of February, 1979 at 8:30 a. m. in Houston, Texas for the purpose of:

1. Hearing evidence concerning the reasonableness of the attorneys fees claimed by HISD and HTA in the event the parties cannot stipulate upon the reasonableness of the fees; and

2. Entering an order in this matter awarding attorneys fees and costs to HISD and HTA.